UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROKSTAD HOLDINGS, a Canadian corporation,<br><br>   Plaintiff,<br><br>-against-<br><br>STELLEX CAPITAL MANAGEMENT, LLC., a Delaware company,<br><br>   Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rokstad Holdings, through counsel, hereby complains against Stellex Capital Management, LLC and alleges the following causes of action:

## PARTIES

1. Plaintiff, Rokstad Holdings Corporation ("***Rokstad Holdings***") is a Canadian corporation and sole owner of Rokstad Power Construction Services Ltd., Rokstad Power Transmission Services Ltd., Rokstad Power (Prairies) Ltd., Plowe Power Systems (2018) Ltd., Rokstad Power (2018) Ltd., and Golden Ears Painting & Sandblasting (2018) Ltd., all of which are companies incorporated according to the laws of the Province of British Columbia.

2. Rokstad Holdings is also the sole owner of the U.S. entities Rokstad Power Inc. and Rokstad Power (East) Inc. Rokstad Power Inc., in turn, is the sole member of Rok Air LLC. All three companies were registered and formed under the laws of Delaware. Collectively, the entities described in paragraphs 1-2 are referred to as the "***Rokstad Group***."

1

3. Defendant, Stellex Capital Management, LLC ("**Stellex**") is a Delaware limited liability company, located at 1209 Orange Street, Wilmington, DE 1980, with its headquarter located at 900 Third Avenue, 25th Floor, New York, NY 10022.

4. The "John Does" are, on information and belief, individuals comprising both former employees of the Rokstad Group and agents of Stellex who conspired together and otherwise engaged in tortious conduct against Rokstad Holdings in committing the acts described herein. Rokstad Holdings reserves the right to name these "John Does" and add claims against them when their identity is discovered.

## JURISDICTION, AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because more than $75,000 is at issue and because this dispute is between a citizen of this state and a citizen of a foreign state.

6. Venue is proper in this Court under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### *The Rokstad Group's Business*

7. The Rokstad Group is a leading distribution and transmission construction company that operates across the United States and Canada, offering a full range of power line contracting services.

8. Stellex is a private equity firm that invests in middle-market companies in North American and Europe.

9. The Rokstad Group employs over 400 employees, and its business includes construction and maintenance of low, medium and high voltage transmission lines, overhead and

underground construction and maintenance, underground distribution, emergency and storm outage response and live line and barehand services.

10. Since 2018, Rokstad Holdings has been wholly owned by two family trusts, the Rokstad Family Trust and the BROK Trust (the "***Trusts***").

11. To fund the growing Rokstad business, in 2019 and 2020, the Rokstad Group entered into credit facilities with two lenders: (1) Crown Capital Partner Funding ("***Crown***") and (2) Canadian Western Bank ("***CWB***").

12. On April 26, 2019, Rokstad Holdings and several members of the Rokstad Group entered into a loan agreement with Crown, in which Crown agreed to establish a credit facility in the principal amount of CAD $30,000,000 (together with all subsequent amendments, the "***Crown Loan Agreement***"). Crown advanced the $30,000,000 pursuant to the Crown Loan Agreement.

13. In November 2019, the parties amended the Crown Loan Agreement to include an additional CAD $20,000,000.

14. In June 2020, Rokstad Holdings entered into a loan agreement with CWB (together will all subsequent amendments, the "***CWB Loan Agreement***") in which CWB agreed to establish a credit facility and advance loans to Rokstad Holdings in an aggregate amount not exceeding CAD $51,000,000, available in CAD and USD.

15. Several months later, the parties amended the CWB Loan Agreement to increase the credit limit to CAD $65,000,000.

16. In September 2021, the Rokstad Group experienced financial challenges because one of its largest customers, Pacific Gas & Electric, suspended work for an extended period of time.

17. CWB sent a notice of default for the CWB Loan Agreement in March 2022, and the parties negotiated a forbearance agreement in August 2022 (the "**_Forbearance Agreement_**"). The Forbearance Agreement has been amended and extended several times.

### *Stellex Enters into a Non-Disclosure Agreement with Rokstad Holdings*

18. In December 2022, Rokstad Holdings hired an M&A advisor, Stifel, Nicolaus & Co., Inc. ("**_Stifel_**"), to assist with an equity raise and explore a profitable sale, acquisition, or merger.

19. As a first step in this process, Rokstad Holdings sold its Arizona division, with the sale closing in October 2023. Rokstad Holdings used the proceeds from that sale to pay down a portion of the CWB debt.

20. Efforts to sell the remaining portion of the Rokstad Group, or otherwise raise funds to resolve its debts with CWB and Crown, began in 2024.

21. During the time the Rokstad Group was in default of the CWB Loan Agreement, it worked closely with CWB and its financial advisors, Price Waterhouse Cooper ("**_PWC_**").

22. At no time in the past two years has CWB, PWC, or Crown indicated any desire or need for protective measures with respect to the ongoing operations or management of the Rokstad Group.

23. Stifel identified Stellex as a potential purchaser of Rokstad Holdings and introduced Stellex to Rokstad Holdings.

24. Stellex interacted and negotiated with Stifel and Rokstad Holdings through Irina Krasik ("**_Krasik_**"), Stellex's managing director, and John Carter ("**_Carter_**"), a principal in the consulting firm Carter Brothers.

25. On or about May 13, 2024 and in connection with the potential sale, Stellex signed a Confidentiality and Nondisclosure Agreement (the "*NDA*").

26. The NDA governs the use and disclosure of "Evaluation Material," which the NDA broadly defines to include "any information concerning [Rokstad Holdings] . . . which is furnished to [Stellex] or to [its] Representatives by or on behalf of [Rokstad Holdings] on or after the date hereof in connection with the potential transaction between [Stellex] and [Rokstad Holdings]."

27. The NDA states that Stellex "agree[d] to treat any information concerning [Rokstad Holdings] . . . in accordance with the provisions of this letter agreement."

28. Importantly, the NDA contains the following limitation on Stellex's use and disclosure of Evaluation Material:

> [Stellex] hereby agree[s] that [it] shall . . . use the Evaluation Material *solely for the purpose of evaluating a possible transaction* between the [Rokstad Group] and [Stellex]. [Stellex] further agree[s] that the Evaluation Material will be kept confidential and that [it] will not . . . disclose any of the Evaluation Material in any manner whatsoever . . . ."

(Emphasis added).

29. The NDA also requires Stellex to, "upon request of [Rokstad Holdings] and for any reason," "deliver to [Rokstad Holdings] or . . . destroy all documents (and all copies thereof) furnished to [Stellex] by or on behalf of [Rokstad Holdings]." Sellex also agreed to "confirm in writing" that these documents had been destroyed.

30. These provisions all make clear that Stellex could not use or disclose any of Rokstad Holding's information except for the sole purpose of exploring a possible transaction with Rokstad Holdings.

31. By signing the NDA, Stellex also agreed to various non-solicitation obligations. Specifically, Stellex made the following promise:

> In consideration of the Evaluation Material being furnished to [Stellex], [Stellex] agree[s] that, without the prior written consent of the Company (email being sufficient), for a period of one (1) year from the date hereof [Stellex] will not, directly or indirectly, (i) solicit any executive officer or senior management employee of [Rokstad Holdings] with whom you had direct contact or who first became known to you during your evaluation of [Rokstad Holdings], provided, however, that the foregoing provision will not prevent you from soliciting for employment or employing any such person who: (i) contacts you on his or her own initiative without any direct or indirect solicitation by or encouragement from you, (ii) ceased to be an employee of [Rokstad Holdings] prior to the solicitation event, or (iii) responds to general advertisements and other similar broad forms of solicitation.

32. Importantly, in the NDA, the parties agreed that "money damages would not be a sufficient remedy for any breach of [the NDA] . . . and that the non-breaching party shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach."

33. The NDA states that it "shall be governed by and construed in accordance with the laws of the State of Delaware without giving effect to such state's principles of conflicts of laws."

***Stellex Breaches the NDA and Uses Evaluation Material to Attempt to Take Over Rokstad's Business***

34. While Rokstad Holdings and Stellex were negotiating a potential deal, the parties discussed strategies to use the acquisition to release Crown's and CWB's security interest in the Rokstad Group's assets. Specifically, they discussed the discounts they expected Crown and CWB would accept to resolve and release their respective loans.

35. Rokstad Holdings only disclosed the existence and terms of the Crown Loan Agreement and the CWB Loan Agreement because Stellex agreed not to use the information for any purpose other than exploring a potential transaction with Rokstad Holdings.

36. During Stellex's due diligence efforts, it learned specific details relating to the Crown Loan Agreement and the CWB Loan Agreement.

37. Stellex also learned specific details about Crown and CWB's interest in resolving its loans with Rokstad Holdings for steep discounts, and on favorable terms.

38. Had Rokstad Holdings known that Stellex would use its knowledge of the Crown Loan Agreement and the CWB Loan Agreement for any purpose other than to finalize and close a transaction with Rokstad Holdings, it would never have disclosed that information to Stellex.

39. Indeed, the very purpose of the NDA was to preclude Stellex from using such confidential and sensitive financial information for anything other than a transaction with Rokstad Holdings.

40. During negotiations, Rokstad Holdings' former CFO, Tamara Wilson ("**Wilson**"), and Stellex created an inaccurate financial model that predicted that the Rokstad Group would run out of cash by early to mid-September 2024.

41. Specifically, Wilson and Stellex either recklessly or intentionally conspired to overstate the Rokstad Group's account payables and accrued liabilities by approximately $7.2 million.

42. Based on its own due diligence, and on information and belief, Stellex knew or ought to have known that its financial model dramatically overstated the Rokstad Group's account payables and accrued liabilities by more than $7.2 million.

43. During the due diligence period, Stellex and Wilson recklessly or intentionally conspired to manipulate financial forecasts and models to suggest that the Rokstad Group needed $27.9 million CAD at closing to satisfy outstanding vendor obligations.

44. In addition, the financial model Stellex and Wilson conspired to create stated that the Rokstad Group needed $22.3 million CAD in working capital to remain viable past mid-September 2024.

45. On information and belief, Stellex knew or ought to have known that this model was inaccurate and overstated the Rokstad Group's need for working capital.

46. On September 4, 2024 (during the due diligence period), CWB demanded payment under the CWB Loan Agreement for a total of $25,703,129.31 USD and $7,939,189.15 CAD.

47. As Rokstad Holdings and Stellex negotiated a potential deal, Stellex changed its proposals so drastically that they were unrecognizable when compared with the initial LOI.

48. When Rokstad Holdings told Wilson that they were going to terminate discussions with Stellex, she resigned as Rokstad Holdings' CFO.

49. Rokstad Holdings sent a formal termination letter on September 21, 2024.

50. After Rokstad Holdings terminated negotiations with Stellex, it worked vigorously to raise funds and create a plan to resolve its indebtedness to Crown and CWB.

51. To that end, Rokstad Holdings secured an LOI for the sale of its Canadian operations that would have resulted in CWB being paid more than what was discussed during the Stellex negotiations. Throughout the process, Rokstad Holdings kept CWB and PWC informed.

52. Stellex, knowing that Rokstad Holdings was attempting to satisfy the Crown and CWB debts—and having proprietary, confidential, and sensitive information about the prior

negotiations with Crown and CWB—began using the confidential Evaluation Material it received to purchase the debts for itself.

53. On information and belief, Stellex used the inaccurate financial model to influence CWB to sell the Rokstad debt to two Stellex-affiliated companies at a heavily discounted price.

54. As authorized and dictated by the NDA, on October 1, 2024, Rokstad Holdings sent Stellex a written request to (1) return or destroy all documents it received during negotiations and (2) destroy all Evaluation Material it prepared in connection with the potential transaction. Rokstad Holdings asked Stellex to confirm when it had taken the requested actions.

55. Stellex ignored Rokstad Holdings' request.

56. Instead, on October 8, 2024—only seven days after receiving a request to destroy all information gained vis-à-vis the NDA and the potential transaction—Stellex sent a letter to the Rokstad Holdings, stating that two entities it had created to purchase Rokstad Holdings—Stellex Power Line Opco LLC and 1501841 B.C. Ltd—had acquired CWB's rights under the CWB Loan Agreement.

57. PWC later informed Rokstad Holdings that Stellex had reached out to CWB on October 5, 2024 to initiate discussions about acquiring the debt.

58. In the letter, Stellex purported to exercise powers to appoint directors to each entity in the Rokstad Group and purported to amend all governing documents.

59. Stellex also stated that it is owed more than $42 million CAD, despite the fact that CWB was willing to resolve the debt for substantially less than that amount.

60. Stellex also purported to appoint Wilson and Carter as directors. Carter was one of Stellex's lead negotiators during negotiations with Rokstad Holdings. And Wilson was the insider

that conspired with Stellex to create the false financial forecasts and models Stellex used in its negotiations with CWB.

61. Based on the fact that Wilson aligned herself with Stellex shortly after her resignation, on information and belief, Stellex solicited Wilson away from Rokstad Holdings in violation of the NDA.

62. On information and belief, Stellex did not appoint Wilson and Carter as independent directors. Instead, Stellex chose these individuals to help Stellex mount a hostile takeover of Rokstad Holdings.

63. Stellex could not have purchased the CWB Loan Agreement or taken these actions without violating the terms of the NDA, which prohibits Stellex from using Rokstad Holdings' sensitive business and financial information for any purpose other than evaluating a potential transaction involving it and Rokstad Holdings.

64. Indeed, Stellex would not have even *known* about the CWB Loan Agreement—let alone CWB's willingness to resolve Rokstad Holdings' debt for a substantial discount—but for the disclosures made by Rokstad Holdings under the auspices of the NDA.

65. Stellex could not have caused Stellex Power Line Opco LLC or 1501841 B.C. Ltd. to purchase the CWB Loan Agreement without disclosing Evaluation Material to those two entities. Indeed, that disclosure alone violated the NDA.

66. Stellex did not reach out to Rokstad Holdings to discuss its intent to purchase the CWB Loan Agreement, appoint biased directors, or take any other actions. Instead, Stellex simply purchased the CWB debt at a substantial discount without Rokstad Holdings' knowledge and attempted to take over the Rokstad Group's business.

67. On information and belief, Stellex purchased CWB's debt as leverage to purchase Rokstad Holdings for a lower price than Rokstad Holdings would have been willing to otherwise consider as part of a good faith, fairly negotiated market-rate transaction.

68. Only two days after informing Rokstad Holdings that it had purchased the CWB Loan Agreement, Stellex filed an *ex parte* request for the appointment of an interim receiver with the Supreme Court of British Columbia, Canada. This proceeding is currently pending as Case No. B-240477 (the "***Receivership Action***").

69. In other words, in less than ten days after Stellex received a request to destroy all of Rokstad Holdings' documents and information it received during the transaction (pursuant and subject to the terms of the NDA), Stellex (1) purchased the Rokstad Group's debt with CWB for a substantial discount; (2) purported to appoint directors to the Rokstad Group and change the governing documents; and (3) filed an *ex parte* request for an interim receiver to shut out current management of the Rokstad Group.

70. In support of Stellex's *ex parte* request for an interim receiver, Krasik submitted an affidavit with inaccurate and incomplete information regarding the Rokstad Group's financial condition (the "***Krasik Affidavit***")—information indisputably obtained in connection with, and subject to, the NDA.

71. As stated in the affidavit, Krasik received most of her information from Wilson.

72. Krasik would never have even known that Wilson works for the Rokstad Group but for Rokstad Holdings' disclosure of that fact under the auspices of the NDA.

73. Moreover, Krasik also included scores of information that Stellex could only have received during its purchase negotiations with Rokstad Holdings. Again, this information was obtained pursuant and subject to the NDA.

74. Based on the incomplete and inaccurate information contained in the Krasik Affidavit, the court in the Receivership Action appointed an interim receiver on October 10, 2024.

75. After the court in the Receivership Action appointed an interim receiver for a period of 30 days, Stellex caused Bank of America to lock the Rokstad Group out of its accounts and swept Rokstad Holdings' funds.

76. Some of the accounts that were blocked included those used for union dues and payroll.

77. On October 10, 2024, and as a direct result of Stellex's interference with its Bank of America accounts, the Rokstad Group missed payroll for the first time in its history, despite the fact that Rokstad had enough money to meet its payroll obligations.

78. Also as a result of Stellex's actions, Rokstad Holdings incurred avoidable expenses, union grievances, and other harms to its business.

79. Stellex's general course of conduct—which includes violating the NDA and using confidential information for its own gain, purchasing the CWB Loan Agreement, purporting to appoint directors to the Rokstad Group, purporting to change the Rokstad Group's governing documents, and initiating the Receivership Action—has been devastating to the Rokstad Group's business.

80. As proof that Stellex's forecasts and financial models were misleading and inaccurate, Rokstad Holdings has successfully managed its business into November 2024 without the $22.3 million CAD in working capital that Stellex said Rokstad Holdings needed to survive through September 2024.

81. In addition, Rokstad Holdings has given the interim receiver a financial budget demonstrating that it needs no outside working capital to successfully operate through January 2025.

### *Stellex Purchases the Crown Debt in Violation of the NDA*

82. On October 29, 2024—while the interim receiver was operating in its court-appointed capacity—Rokstad Holdings learned that Stellex had purchased the Crown Loan Agreement.

83. On information and belief, Stellex purchased the Crown debt for a heavily discounted price.

84. Stellex could not have purchased the Crown Loan Agreement without violating the NDA. This is so because Stellex would not have even known of the existence of the Crown Loan Agreement had it not engaged in negotiations to purchase Rokstad Holdings and signed the NDA.

85. The Crown Loan Agreement, when combined with the CWB Loan Agreement, represents just over $100 million CAD of indebtedness.

86. On information and belief, Stellex has acquired both debts for less than $30 million.

87. At no point has Crown sought a receivership or otherwise attempted to interfere with the Rokstad Group's operations or management.

88. Before Stellex purchased the Crown Loan Agreement, Rokstad Holdings had been formulating a viable plan to pay off both Crown and CWB.

89. On information and belief, neither Crown nor CWB would have required Rokstad Holdings to pay this amount all at once. Indeed, the fact that Stellex negotiated and acquired the

CWB Loan Agreement and the Crown Loan Agreement for steep discounts demonstrates that Rokstad Holdings could have accomplished the same or even better result.

90. Crown and CWB had been cooperating with Rokstad Holdings over the outstanding indebtedness for over two years. Neither Crown nor CWB would have taken the actions that Stellex has been taking, namely (1) appointing biased directors; (2) amending the Rokstad Group's governing documents; and (3) attempting to force the Rokstad Group into a receivership.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract Against Stellex)

91. Rokstad Holdings incorporates all preceding allegations.

92. The NDA is a valid and enforceable agreement between Rokstad Holdings and Stellex, pursuant to which Rokstad Holdings agreed to disclose confidential Evaluation Material to Stellex to enable it to evaluate a potential transaction with Rokstad Holdings.

93. In exchange for Rokstad Holdings' promise, Stellex promised to (1) use the Evaluation Material solely for the purpose of evaluating a possible transaction with Rokstad Holdings; (2) not disclose the Evaluation Material to any other person or entity without written permission from Rokstad Holdings; (3) destroy all Evaluation Material upon request; and (4) not solicit any executive officer or senior management employee of Rokstad Holdings away from the Rokstad Group.

94. In the NDA, Stellex agreed that "money damages would not be a sufficient remedy for any breach of [the NDA] . . . and that the non-breaching party shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach."

95. Stellex breached the NDA in at least the following ways:

14

    a. Using Evaluation Material to acquire the CWB Loan Agreement;

    b. Using Evaluation Material to acquire the Crown Loan Agreement;

    c. Using Evaluation Material to cause Stellex Power Line OPCO LLC and 1501841 B.C. Ltd. to purchase the CWB Loan Agreement and the Crown Loan Agreement;

    d. Using Evaluation Material to initiate the Receivership Action.

    e. Disclosing Evaluation Material in the Receivership Action through the Krasik Affidavit;

    f. Disclosing Evaluation Material to Stellex Power Line OPCO LLC and 1501841 B.C. Ltd.;

    g. Failing to destroy Evaluation Material upon Rokstad Holdings' request;

    h. Soliciting executive officers and senior management officials away from Rokstad Holdings, including Wilson; and

    i. Generally using Evaluation Material to mount a hostile takeover of Rokstad Holdings.

96. As a result of Stellex's breaches of the NDA, Rokstad Holdings is facing catastrophic damage to its business and is facing a hostile takeover attempt from an outside entity. This damage cannot be adequately compensated through the payment of money.

97. Rokstad Holdings is accordingly entitled to equitable relief in the form of an injunction and specific performance.

98. In addition to equitable relief, Rokstad Holdings seeks all general, compensatory, and consequential damages in an amount incurred as a result of Stellex's violation of the NDA and interference with Rokstad Holding's business, including, but not limited to, the difference

between what Stellex paid to acquire the CWB and Crown debt, and the amount that Stellex now seeks to collect from the Rokstad Group, which amount is believed to exceed $75 million.

99. Rokstad is accordingly entitled to a judgment as set forth in the Prayer for Relief.

## SECOND CLAIM FOR RELIEF
**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against Stellex)**

100. Rokstad Holdings incorporates all prior allegations.

101. Under Delaware law, an implied covenant of good faith and fair dealing is inherent in the NDA.

102. This implied covenant prohibits Stellex from acting arbitrarily or unreasonably in connection with the NDA.

103. This implied covenant also requires Stellex to act in good faith toward Rokstad Holdings in connection with the NDA.

104. To the extent these do not amount to a breach of the express terms of the NDA, Stellex breached the implied covenant of good faith and fair dealing by:

   a. Using Evaluation Material to acquire the CWB Loan Agreement;

   b. Using Evaluation Material to acquire the Crown Loan Agreement;

   c. Using Evaluation Material to cause Stellex Power Line OPCO LLC and 1501841 B.C. Ltd. to purchase the CWB Loan Agreement and the Crown Loan Agreement;

   d. Using Evaluation Material to initiate the Receivership Action;

   e. Disclosing Evaluation Material in the Receivership Action through the Krasik Affidavit;

   f. Disclosing Evaluation Material to Stellex Power Line OPCO LLC and 1501841 B.C. Ltd.;

   g. Failing to destroy Evaluation Material upon Rokstad Holdings' request;

  h. Soliciting executive officers and senior management officials away from Rokstad Holdings, including Wilson; and

  i. Generally using Evaluation Material to mount a hostile takeover of Rokstad Holdings' business.

 105. As a result of Stellex's breaches of the implied covenant, Rokstad Holdings is facing catastrophic damage to its business and is facing a hostile takeover attempt from an outside entity. This damage cannot be adequately compensated through the payment of money.

 106. Rokstad Holdings is accordingly entitled to equitable relief in the form of an injunction and specific performance.

 107. In addition to equitable relief, Rokstad Holdings seeks all general, compensatory, and consequential damages in an amount incurred as a result of Stellex's violation of the NDA and interference with Rokstad Holding's business, including, but not limited to, the difference between what Stellex paid to acquire the CWB and Crown debt, and the amount that Stellex now seeks to collect from the Rokstad Group, which amount is believed to exceed $75 million.

 108. Rokstad Holdings is accordingly entitled to a judgment as set forth in the Prayer for Relief.

## **PRAYER FOR RELIEF**

 WHEREFORE, Rokstad Holdings prays for the following relief:

 1. On Rokstad Holdings' First Cause of Action, for breach of contract, for preliminary and permanent injunctive relief prohibiting Stellex from (1) enforcing any rights it may have under the Crown Loan Agreement and CWB Loan Agreement; (2) using any Evaluation Material, as that term is defined in the NDA; (3) disclosing any Evaluation Material; (4) soliciting or employing any of Rokstad Holdings' executive employees or senior

management; and (5) otherwise purchasing or attempting to purchase Rokstad Holdings, its assets, or any of Rokstad Holdings' subsidiaries or their assets. In addition and/or alternatively, Rokstad Holdings is entitled to all general, compensatory, and consequential damages in an amount measured by the difference between what Stellex paid to acquire the CWB and Crown debt, and the amount that Stellex now seeks to collect from the Rokstad Group, which amount is believed to exceed $75 million.

        2.        On Rokstad Holdings' Second Cause of Action, for breach of the implied covenant of good faith and fair dealing, for preliminary and permanent injunctive relief prohibiting Stellex from (1) enforcing any rights it may have under the Crown Loan Agreement and CWB Loan Agreement; (2) using any Evaluation Material, as that term is defined in the NDA; (3) disclosing any Evaluation Material; (4) soliciting or employing any of Rokstad Holdings' executive employees or senior management; and (5) otherwise purchasing or attempting to purchase Rokstad Holdings, its assets, or any of Rokstad Holdings' subsidiaries or their assets. In addition and/or alternatively, Rokstad Holdings is entitled to all general, compensatory, and consequential damages in an amount measured by the difference between what Stellex paid to acquire the CWB and Crown debt, and the amount that Stellex now seeks to collect from the Rokstad Group, which amount is believed to exceed $75 million.

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable to a jury.

DATED: November 1, 2024				RIMON P.C.


						By:/s/William W. Bergesch
							William W. Bergesch
							100 Jericho Quadrangle Suite 300
							Jericho, NY 11753
							Tel: (516) 479-6317
							William.bergesch@rimonlaw.com

							*Local Counsel for Plaintiff Rokstad Holdings*

						BENNETT TUELLER JOHNSON & DEERE, LLC

						By:___KC Hooker_____
							Barry N. Johnson
							Jeremy C. Reutzel
							Joshua L. Lee
							KC Hooker
							3165 East Millrock Drive, Suite 500
							Salt Lake City, Utah 84121
							Tel: (801) 438-2000
							bjohnson@btjd.com; jreutzel@btjd.com;
							jlee@btjd.com; kchooker@bjtd.com

							*Attorneys for Plaintiff Rokstad Holdings*

						*Pro Hac Vice Admission Pending